IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **RICARDO RODRIGUEZ, JR.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-CV-164-P** |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Ricardo Rodriguez, Jr. ("Rodriguez") filed this action pursuant to Section 405(g)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner

of Social Security denying his claim for a period of disability and disability insurance benefits

("DIB") under Title II of the Social Security Act ("SSA"). In May 2020, Rodriguez protectively

applied for DIB, alleging that his disability began on May 1, 2020. (Transcript ("Tr.") 10; *see* Tr.

181-84.) Rodriguez's application was both denied initially and on reconsideration. (Tr. 10; *see*

Tr. 74-75, 98-99.) Rodriguez then requested a hearing before an administrative law judge ("ALJ").

(Tr. 10; *see* Tr. 113-14.) On November 15, 2021, the ALJ held a hearing, and, on December 12,

2021, the ALJ issued a decision finding that Rodriguez was not disabled within the meaning of the

1

SSA. (Tr. 10-21; *see* Tr. 26-61.) Rodriguez then filed a request for review of the ALJ's decision

to the Appeals Council. (Tr. 178-80.) On January 27, 2022, the Appeals Council denied

Rodriguez's request, leaving the ALJ's decision to stand as the final decision of the Commissioner.

(Tr. 1-4.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous

regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically

determinable physical or mental impairment" lasting at least twelve months that prevents the

claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-

step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently

working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful

activity" is defined as work activity involving the use of significant physical or mental abilities for

pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination

of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d

1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third,

disability will be found if the impairment or combination of impairments meets or equals an

impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1;

20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's

medical status alone, the impairment or impairments must prevent the claimant from returning to

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. Jun. 2, 2009). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Rodriguez presents the following issues:

1. Whether the ALJ erred in mischaracterizing that Rodriguez could perform light work in the residual functional capacity ("RFC") determination;

2. Whether the ALJ erred in relying on the vocational expert ("VE") testimony that Rodriguez could perform the identified jobs with the social interaction limitations found in the RFC determination;

3. Whether the ALJ erred by relying on unreliable vocational expert testimony in finding at Step Five that there were a significant number of jobs in the national economy that Rodriguez could perform; and

4. Whether the ALJ failed to fully and fairly develop the record concerning Rodriguez's medically documented cervical spine impairment.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 7-18.)

### IV. ALJ DECISION

In a decision dated December 21, 2021, the ALJ concluded that Rodriguez was not disabled within the meaning of the SSA. (Tr. 10-21.) At step one, the ALJ found that Rodriguez had not engaged in substantial gainful activity since May 1, 2020, his alleged onset date and that Rodriguez met the insured status requirements of the SSA through December 31, 2024. (Tr. 12.) At step two, the ALJ found that Rodriguez had the following severe impairments: bilateral knee degenerative joint disease and meniscal tears status post-surgery, lumbar degenerative disc disease, and post-traumatic stress disorder. (Tr. 12.) Next, at step three, the ALJ determined that Rodriguez did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 12-14.) As to Rodriguez's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 404.1567(b) except that he can stand and/or walk for four hours and sit for about six hours in an eight-hour workday. He can occasionally stoop, kneel, crouch,

4

crawl, and climb ramps or stairs. He cannot climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. He can understand, remember, and carry out detailed but not complex instructions. He can maintain attention and concentration for extended periods. He can have occasional contact with supervisors and co-workers, but cannot have any contacts with the public.

(Tr. 14 (emphasis omitted); *see* Tr. 14-19.)

At step four, the ALJ found that Rodriguez was unable to perform any of his past relevant work. (Tr. 19.) Subsequently, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Rodriguez could perform based on his age, education, work experience, and RFC. (Tr. 20-21.) Accordingly, the ALJ found that Rodriguez was not disabled as defined in the SSA from May 1, 2020 through the date of the decision. (Tr. 21.)

## V. DISCUSSION

### A.    <u>Physical RFC Determination and Light Work</u>

In his brief, Rodriguez claims that the ALJ erred in finding that Rodriguez could perform "light work as defined in 20 CFR 404.1567(b)." (Pl.'s Br. at 8.) Rodriguez argues that ALJ erred because he based his RFC determination on the opinions of the state agency medical consultants ("SAMCs") that actually found Rodriguez could perform sedentary work and was limited to standing and walking for a total of four hours. (Pl.'s Br. at 7-8.) Rodriguez also argues that the "ALJ's hypothetical RFC to the VE was similarly mischaracterized." (Pl.'s Br. at 8.) Specifically, Rodriguez asserts:

In the Plaintiff's case, the ALJ violated [Social Security Ruling 96-8p] and planted a poisonous seed in the VE's mind when identifying possible jobs the Plaintiff could perform at step 5. At the hearing, the ALJ's hypothetical RFC at step 4 was mischaracterized as light. In response, the VE testified a hypothetical individual could not perform the Plaintiff's past relevant work. At step 5, the ALJ continued his mischaracterization and asked the VE, "Is this person able to do any work at the light level?" With the poisonous seed of retaining the RFC to perform

5

"light" work implanted in the VE's mind, the VE testified the Plaintiff could still perform the jobs of an assembler of small products and a packer, inspector. Had the ALJ not planted the mischaracterized seed in the VE's head that the Plaintiff could perform light work activities, the VE would not have considered jobs at the light level. This error prejudiced the Plaintiff because a different outcome could have occurred. Reversal is necessary.

(Pl.'s Br. at 9-10 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304,

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

at *1 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

In this case, as set forth above, the ALJ found that Rodriguez had the physical RFC to "perform light work as defined in 20 CFR 404.1567(b)" except that he: (1) "can stand and/or walk for four hours and sit for about six hours in an eight-hour workday;" (2) can occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; (3) cannot climb ladders, ropes, or scaffolds, and (4) should avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. (Tr. 14.) In making this physical RFC determination, the ALJ considered, *inter alia*, diagnostic tests and the treatment notes and records from several doctors, including an orthopedic surgeon, a pain management specialist, the SAMCS, the consultative examiner Aaron Boone, D.O. ("Dr. Boone"), and Allen Kent, M.D. (Tr. 14-19.) In addition, the ALJ stated:

Based on the findings of bilateral knee pathology, as well as the stenosis in his lumbar spine, I find support for reduced lifting and/or carrying due to the effects of his pain and dysfunction. In recognition of his long history of knee problems, I have also limited his standing and/or walking to only four hours per day. . . .

. . . .

The State agency medical consultants at both levels concurred in the determination that the claimant could perform Light exertional work with reduced standing and walking, as well as postural limitations (Exhibits 1A, 4A). These determinations are consistent with the medical evidence discussed above, namely the physical examinations showing reduced range of motion of the knees but no reduction in muscle strength. They are also consistent with the largely conservative treatment and the claimant's subjective statements in the record concerning the effectiveness of that treatment. Additionally, as State agency consultants, both physicians have specialized training and experience in the Agency's rules and regulations concerning the determination of disability, in addition to their medical training. I find this expertise, and the fact that they agreed with each other, persuasive. Overall, these determinations are largely persuasive.

The medical consultative examiner, Dr. Boone, D.O., who examined the claimant in March 2021, issued a medical opinion (Exhibit 14F). However, this opinion is vague in terms of the claimant's function by function capacity and used terms of art that were not defined. For these reasons, this opinion is of minimal persuasive value.

. . . .

In sum, the record does not provide a reasonable basis for finding greater level of limitations than that set forth in the residual functional capacity. Consideration of the record as a whole, including the claimant's reported activities of daily living, conservative/routine treatment modalities, the longitudinal medical record, and the opinion evidence shows the claimant's allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record. Despite his impairments, the claimant retains the ability to meet the requirements of work within the parameters of the above-noted residual functional capacity.

(Tr. 17-19.)

In this case, while not entirely clear, it appears that Rodriguez is arguing that the ALJ erred when finding Rodriguez had the RFC to perform light work because he erroneously relied, in large part, on the RFC determinations made by the SAMCs—who, contrary to what was stated by the

ALJ, actually found that Rodriguez was capable of performing sedentary (not light) work. (Tr. 72, 95.) While Rodriguez is correct that the ALJ did error in stating that the SAMCs found that Rodriguez could perform light work, the determinative issue is whether the ALJ's RFC determination is supported by substantial evidence. As noted above, the ALJ is responsible for assessing a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1546(c). If substantial evidence in the record supports an ALJ's determination of a claimant's RFC, there is no reversible error. *See Gutierrez v. Barnhart,* No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005). "What matters is that the ALJ's conclusions are supported by at least one medical opinion and are grounded in substantial record evidence." *Vasquez v. Comm'r of Soc. Sec.*, No. 7:21-cv-00028-O-BP, 2022 WL 2975471, at *5 (N.D. Tex. June 30, 2022) (citing *Hollis*, 837 F.2d at 1383).

In this case, it is clear that the ALJ relied heavily on the SAMCs opinions in formulating Rodriguez's physical RFC opinion as the SAMCs (like the ALJ) found that Rodriguez: (1) could (1) occasionally lift up to twenty pounds and frequently lift up to ten pounds; (2) should be limited to standing and walking for four hours and sitting for about six hours in an eight-hour workday; (3) could occasionally stoop, kneel, crouch, and climb ramps or stairs. (*Compare* Tr. 14 *with* Tr. 67-69, 87-89.) The differences are that the ALJ found that Rodriguez was capable of performing light work and could occasionally crawl and never climb ladders, ropes, or scaffolds while the SAMCs opined Rodriquez could perform sedentary work and could frequently crawl and occasionally climb ladders, ropes and scaffolds. (*Compare* Tr. 14 *with* Tr. 67-69, 72, 87-89, 95.)

"Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling

of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). Furthermore, according to SSR 83-10, frequent lifting or carrying of objects weighing up to 10 pounds "requires being on one's feet up to two-thirds of a workday," that is, "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

Sedentary work, on the other hand, is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Furthermore, according to SSR 83-10, sedentary work is, "[b]y its very nature, work performed in a seated position [that] entails no significant stooping." SSR 83-10, 1983 WL 31251, at *5.

While the SAMCs stated that Rodriguez was limited to sedentary work, it is clear based upon their actual function-by-function findings that Rodriguez had the ability to perform light work as long as he was limited to standing and walking for four hours and sitting for about six hours in and eight-hour workday.[4] The ALJ relied extensively upon the SAMCs' findings, as well as other evidence in the record to formulate Rodriguez's actual RFC determination. In fact, in the areas of crawling and climbing ladders, ropes or scaffolds where the ALJ's physical RFC determination varied from the SAMCs' findings, the ALJ made more restrictive findings than

---

[4] The Court notes that the ALJ, at Step Five, specifically recognized that Rodriguez's "exertional capacity in effect falls between the Light and Sedentary exertional levels." (Tr. 20.)

those found by the SAMCs based on the other evidence in the record.[5]  The ALJ discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See, e.g., Muse,* 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's RFC determination, remand is not required as to this issue.

Moreover, it is well-established that "[p]rocedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have [not] been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  To be entitled to relief, the claimant must establish that the ALJ erred and that the ALJ's error "cast[s] into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  In this case, it is clear that the ALJ did consider the SAMCs' opinions and relied heavily upon them in making the physical RFC determination.  Moreover, while the SAMCs found that Rodriquez was limited to sedentary work, a reading of the SAMCs' actual opinions supports the finding that Rodriguez could actually perform light work with several additional restrictions.  *See Brown v. Astrue*, No. 10-CV-3213, 2012 WL 264217, at *7 (C.D. Ill. Jan. 27, 2012) (stating that the claimant's argument that a doctor opined that the claimant was limited to sedentary work was factually incorrect because the doctor opined that the claimant could lift twenty pounds occasionally and ten pounds frequently, which are limitations consistent with light work).  Because any error made by the ALJ in evaluating the SAMCs' opinions does not cast into doubt the existence of substantial evidence

---

[5] While the ALJ gave "minimal persuasive value" to the opinion of Dr. Boone, Dr. Boone did opine that Rodriguez should "[a]void unprotected heights" and "avoid driving motor vehicles," findings that the ALJ essentially incorporated into the physical RFC determination.  (Tr. 894; *see* Tr. 14.)

to support the ALJ's decision, the Court finds that such error is harmless and remand is not required. In this case, it is clear that the ALJ properly made his physical RFC determination after carefully analyzing all the medical opinion evidence in the record, including the opinions of the SAMCs.[6]

**B.     VE Testimony and Social Interaction Limitations**

In his brief, Rodriguez next argues that the ALJ erred at step five in relying on the VE testimony that Rodriguez could perform the identified jobs with the social interaction limitations found in the RFC determination. (Pl.'s Br. at 10-11.) Specifically, Rodriguez states:

> The Plaintiff could not perform the jobs identified by the VE with the ALJ's found RFC. The ALJ's RFC restricted the Plaintiff to no contact with the public and only occasional contact with supervisors and co-workers. (Tr. 14.) Despite these limitations, the ALJ concluded the Plaintiff was not disabled because he retained the capability to perform the jobs of an assembler (DOT: 739.687-030) and package inspector (DOT: 559-687-074). (Tr. 20[.]) The [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")] states:
>
> > . . . every occupation requires a worker to function to some degree in relation to data, people, and things. The middle three digits of the DOT code reflect the Worker Function relationships of an occupation, that is the ratings for this job in relationship to data, people, and things. SCO, at E-1.
>
> The SCO also indicates that the fifth digit of the middle three digits of a DOT code relate to people. *See*, Id. The fifth digits in the *Dictionary of Occupational Titles'* ("DOT") codes for an assembler (DOT: 739.687-030) and package inspector (DOT: 559.687-074) are both an 8. A digit of 8 in the fifth digit of the *DOT* code is defined as "Taking Instructions-Helping" people. SCO, at E-1. Because the primary worker function relationships of the jobs of an assembler (DOT: 739.687-030) and a package inspector (DOT: 559.687-074) are taking instructions and helping people (i.e., supervisors, co-workers and the public), the Plaintiff could not perform those jobs as the ALJ limited him to no contact with the public and only occasional contact with supervisors and coworkers.

---

[6] Because the hypothetical question to the VE included all of the disabilities recognized by the ALJ in the RFC determination in the ALJ's decision, it was not defective. *Slay v. Colvin*, No. 4:13-cv-979-O, 2015 WL 935138, at *7 (N.D. Tex. Mar. 4, 2015) ("Because . . . the ALJ's RFC determination as supported by substantial evidence and the ALJ's hypothetical to the VE 'tracked' the RFC assessment, the ALJ did not commit error.")

At the hearing, there was zero discussion of whether the jobs had any contact with the public or more than occasional contact with supervisors and co-workers. Here, there was a conflict between the information contained in the *DOT* and *SCO* and the testimony of the VE, and that conflict was not resolved in the written documentation. . . . [Social Security Ruling 00-4p] says it is an error of law if the ALJ does not explain resolution of the conflict between the VE's testimony and the information in the *DOT* and *SCO* regardless of when or how the conflict was identified. *Id*. . . . This error prejudiced the Plaintiff because a finding of disabled would have been appropriate had the VE and ALJ correctly found the Plaintiff could not perform the jobs of assembler . . . and package inspector . . . . Reversal is required.

(Pl.'s Br. at 10-11 (internal footnotes omitted).)

The DOT and its supplement, the SCO, "comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs." *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608-09 (E.D. Tex. 2009); *see Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990); *Gaspard v. Soc. Admin., Comm'r*, 609 F. Supp. 2d 607, 612 (E.D. Tex. 2009) ("The DOT and its supplement, [SCO], comprise a comprehensive listing of job titles in the United States, along with detailed description of requirements for each job . . . ."); *Conaway v. Astrue*, No. 3:07-CV-0906-BD, 2008 WL 4865549, at *5 (N.D. Tex. Nov. 10, 2008) ("The DOT, along with a companion volume—[SOC]—contain descriptions of the requirements for thousands of jobs in the national economy."). "A DOT code is comprised of nine numbers subdivided into three sets containing three numbers." SCO at App. E-1. "Every occupation requires a worker to function to some degree in relation to data, people, and things." *Id*. "The middle three digits of the DOT code reflect the Worker Function relationships of an occupation, that is the ratings for this job in relationship to data, people, and things." *Id*.; *see* SCO at App. ID-1 (stating that the "Worker Functions" are set forth in the fourth, fifth, and sixth digits of the DOT code). Specifically, "the fifth digit in each [DOT] job classification number, concerns

how the job requires a person to relate to people." *Brown*, 2012 WL 264217, at *8.  According to

the DOT, as a general rule, Worker Functions involving more complex responsibility and judgment

are assigned lower numbers while functions which are less complicated have higher numbers.  *See*

DOT at App. B (rev. 4th ed. 1991); SCO at App. E-1.

Rodriguez, as set forth above, argues that the ALJ erred in relying on the VE's testimony

at step five that Rodriguez could perform the jobs of assembler (DOT code 739.687-030)[7] and

package inspector (DOT code 559-687.074)[8] because such opinion conflicts with the SCO's

Worker Function for people for such jobs.  Rodriguez argues that the fifth digit of the DOT codes

for the two jobs identified by the VE are an 8.  Rodriguez claims that jobs having a Worker

Function of 8 are not consistent with an RFC determination limiting him to no contact with the

public and only occasional contact with supervisors and coworkers.  The Court disagrees.

---

[7] The job of a small products assembler is described in the DOT as follows:

> Performs any combination of following duties to assemble parts of various materials, such as plastic, wood, metal, rubber, or paperboard, to produce small products, such as roller skates, toys, shoe lasts, musical instrument parts, or loudspeakers: Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters.

DOT 739.687-030.

[8] The job of a package inspector is described in the DOT as follows:

> Inspects molded plastic products, such as bottle caps or tops, for defects, and packs inspected products into shipping cartons: Visually examines molded products for defects, such as scratches, discoloration, and *flash*, and discards defective products. Packs inspected product in cartons according to customer specifications, and carries cartons to storage area. May attach metal bands to bottle tops prior to packing to form necks for bottles and measure necks to ensure specified length, using gauge.

DOT 559.687-074.

As noted above, Worker Functions involving the least complicated functions in relating to people are given higher numbers. *See* DOT at App. B, SCO at App. E-1. The number 8, which is labeled as "Taking Instructions-Helping," is the highest number assigned to the fifth digit placement. *See* DOT at App. B; SCO at App. E-1. "Taking Instructions-Helping" is defined as follows: "Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT at App. B. Consequently, a Worker Function of 8 at the fifth digit does not indicate that such jobs require more than no contact with the public and only occasional contact with supervisors and coworkers. *See Brown*, 2012 WL 264217, at *8 ("The DOT and SCO explanation of the Occupational Code Number does not state that an '8' indicates that job requires more than occasional interaction with others" and claimant is, thus, "incorrect and [the VE's] opinions are not inconsistent with the DOT and SCO with respect to the Occupational Code Numbers of the jobs that he listed in his opinions."); *see also Liveoak v. Astrue*, No. 11-CV-0678-CVE-TLW, 2013 WL 183710, at *15 (N.D. Okla. Jan. 17, 2013) (stating that the job worker function of "Taking Instructions-Helping," which is an 8 at the fifth digit of the DOT, "contain[s] possible contact with co-workers or supervisors and no contact with the general public"); *Ackley v. Astrue*, No. CV 10-185-SI, 2011 WL 4369119, at *6 n.3 (stating that the "fifth digit is '8' for both occupations identified here [(laundry worker and warehouse worker)]; it represents 'taking instructions/helping,' the 'least complicated' worker function with respect to other people"). Moreover, there is nothing in the DOT code descriptions for assembler or package instructor that indicates an employee in this job will have any contact with the general public. *See, e.g., McGregor v. Saul*, No. CIV-19-496-SM, 2019 WL 7116110, at *4 (W.D. Okla. Dec. 23, 2019) (noting that jobs of production assembler and small products assembler did not involve any contact

with the general public). Thus, the VE's testimony, which the ALJ relied on at step five, is not inconsistent and does not conflict with the DOT or SCO.

Additionally, the record shows that the ALJ provided the VE with a hypothetical incorporating all of Plaintiff's limitations set forth in the RFC determination so the VE was aware of those limitations, including that Rodriguez was limited to occasional contact with co-workers and supervisors and no contact with the public. (Tr. 51-52.) Because the evidence establishes that the ALJ incorporated all of Plaintiff's limitations in his hypothetical to the vocational expert and there is no apparent conflict between the jobs the vocational expert recommended and the DOT or SCO, the ALJ's reliance on the vocational expert's testimony was proper and supported by substantial evidence. *See Nichols v. Astrue*, 269 F. App'x 526, 528 (5th Cir. 2008) ("The ALJ was entitled to rely upon the vocational expert's knowledge of job requirements."); *Barnes v. Colvin*, No. 6:14-CV-01906-HZ, 2015 WL 8160669, at *7 (D. Or. Dec. 7, 2015). Consequently, remand is not required as to this issue.

**C.    Significant Number of Jobs Available in the National Economy**

In his brief, Rodriquez also argues that the ALJ erred by relying on "unreliable" VE testimony in finding at step five that there were a significant number of jobs in the national economy that Rodriguez could perform.    Specifically, Rodriguez, citing to 20 C.F.R. § 404.1566(b), states:

> In the Decision, the ALJ concluded that Plaintiff was not disabled because he retained the RFC to perform other jobs that existed in significant numbers in the national economy. Based on testimony from the VE at the hearing, the ALJ found there were 9,000 assembler jobs and 6,000 package inspector jobs in the national economy. (Tr. 20.) The Plaintiff contends 15,000 [jobs] in the entire United States of America does not represent a significant number. The Regulations state . . . [that] [i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". . . . The "region where you live" is generally defined as the state where the claimant lives. The Plaintiff lives in Texas, and there

16

was no testimony proffered as to how many of the 15,000 jobs were in Texas. As such, the Plaintiff argues that 15,000 jobs in the vast expanse of the entire United States of America is nothing more than isolated jobs, and do not represent a significant number of jobs he could perform.

(Pl.'s Br. at 11-12 (internal emphasis omitted).)

In addition, Rodriguez argues, pursuant to *Daubert v. Merrell Down Pharmaceuticals Inc.*, 509 U.S. 579 (1993), that "the VE's testimony regarding the number of jobs available was not reliable." (Pl.'s Br. at 12.) Plaintiff claims that "the VE's testimony as to the number of jobs that existed was nothing more than a generated conclusion based upon a guess." (Pl.'s Br. at 13.) Specifically, Rodriquez states:

> Regarding the number of jobs in existence, the VE testified there were 18,000 assembler of small products jobs nationally and that he would erode that number by 50% down to 9,000 jobs which would be amenable to an individual limited to 4 hours of weight bearing. (Tr. 52[.]) Similarly, the VE stated there were approximately 12,000 packer-inspector jobs nationally and he would erode that by 50% leaving 6,000 jobs. (Tr. 53[.]) Nothing scientific, technical, no principles and no methodology expressed-just an unsubstantiated guess to a supposed reduction of 50%. Also, the VE never stated what the original basis was of where he came up with the initial number of 18,000 assembler of small products jobs and 12,000 packer-inspector jobs. . . .

(Pl.'s Br. at 13.)

"An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* As to the specific number of jobs found

by the VE at step five, neither the Fifth Circuit nor this Court has endorsed a bright-line rule for what constitutes a "significant" number of jobs. *See, e.g., Jackson v. Berryhill*, No. 3:16-CV-2957-G-BK, 2017 WL 4457539, at *3 (N.D. Tex. Sept. 11, 2017), *rec. adopted*, 2017 WL 4410812 (N.D. Tex. Oct. 3, 2017) ("The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a 'significant number' of jobs."). Instead, the Court is to use a "case-by-case 'common sense' approach." *See Thorn v. Comm'r of Soc. Sec.*, No. 7:21-cv-00093-O-BP, 2022 WL 2307934, at *4 (N.D. Tex. June 3, 2022).

In *Lirley v. Barnhart*, 124 F. App'x 283, 284-85 (5th Cir. 2005), the court held that 50,000 was a sufficient number of jobs in the national economy to be significant, but there was no indication that 50,000 was the minimum needed to be significant. *See Thorn*, 2022 WL 2307934, at *4 (noting that nothing in *Lirley* suggests the Fifth Circuit intended to set 50,000 jobs as the floor). This Court and others elsewhere have found numbers far lower to be "significant." *See, e.g., Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D. Tex. Mar. 7, 2001) (finding 500 jobs in Texas and 5,000 nationwide significant); *Pitts v. Saul*, No. 3:19-CV-1539-BH, 2020 WL 6566412, at *7 (N.D. Tex. Nov. 9, 2020) (finding significant: semi-conductor bonder, with approximately 22,000 jobs nationally and 1,200 jobs in Texas; addresser, with approximately 8,200 jobs nationally and 181 jobs in Texas; and food and beverage order clerk, with approximately 20,000 jobs nationally and 1,000 jobs in Texas); *Gaspard,* 609 F. Supp. 2d at 619 ("But various federal appellate courts have found 500, 650-900, and 1,400 jobs sufficient under particular circumstances of those cases."); *Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1988) (finding 200 local and 10,000 jobs nationally significant). *But see Nolte v. Saul*, No. 7:20-cv-00080-M-BP, 2021 WL 1379552, at *6 (N.D. Tex. Mar. 16, 2021), *rec. adopted*, 2021 WL

18

1378777 (N.D. Tex. Apr. 12, 2021) (finding 14,000 jobs did not represent significantly available employment).

In this case, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Rodriguez could perform. (Tr. 20.) In making this determination, the ALJ, relying on the VE testimony, found that Rodriguez could perform the job of Assembler, with approximately 9,000 such jobs in the national economy, and the job of Package Inspector, with approximately 6,000 such jobs in the national economy. (Tr. 20.) The VE, in providing his opinions, stated, *inter alia*, that his "opinion is based on observation in the course of providing and performing onsite job analysis and reviewing job descriptions of this occupation and similar occupations." (Tr. 52.) In addition, the ALJ provided the VE with multiple hypotheticals and asked a variety of questions about various jobs and DOT codes. (Tr. 49-61.) The VE explained in detail why certain jobs could be performed and certain jobs could not be performed based on the specific hypothetical provided. (*Id.*)

Because the ALJ extensively questioned the VE and, ultimately, relied on the VE's testimony that jobs exist in significant numbers in the national economy that Rodriguez can perform, substantial evidence supports his finding. *See* 20 C.F.R. § 404.1566(a)-(e) (noting ALJs may rely on VE testimony when making this determination). Applying the "common-sense" approach endorsed by the Fifth Circuit and noting the VE's testimony, the undersigned sees no error that would warrant reconsideration of the ALJ's employability findings. Moreover, there is no evidence that the jobs were not prevalent in the Texas region and Rodriguez does not "provide any evidence that the numbers that the VE cited and the ALJ accepted are wrong or do not constitute significant numbers." *Bergeron v. Soc. Sec. Admin*, No. 16-13944, 2017 WL 2437271, at *7 (E.D. La. May 18, 2017); *cf. Price v. Comm'r of Soc. Sec.*, No. 1:16-CV-43-DAS, 2016 WL

7443793, at \*2 (N.D. Miss. Dec. 22, 2016) (remanding where testimony by VE on cross-exam established that the jobs that existed in significant numbers were in industries not available in claimant's region and there was no testimony to show that such jobs were available in several regions).

Further, whether the job number is sufficient is a moot point. An attorney represented Rodriguez at the administrative hearing, and the attorney had ample opportunity to question the VE regarding the validity of the job numbers. (*See* Tr. 56-58, 60.) If Rodriguez wanted to question the basis of the VE's job numbers, his attorney should have raised the issue at the hearing. *Perez v. Barnhart,* 415 F.3d 457, 464 (5th Cir. 2005). Without such an objection, the ALJ was within his discretion to rely solely on the uncontested VE testimony. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019) (absent objection at the hearing, a VE's testimony may qualify as substantial evidence even when unaccompanied by supporting data). Therefore, because Rodriguez did not object to the VE's testimony at the hearing, the ALJ properly relied on the VE's testimony. The VE's testimony provided evidence of substantial jobs in the national economy, and reversal is not proper on this point.

As to the issue of whether the VE was properly qualified as an expert, the Court notes that the "Federal Rules of Evidence do not apply in Social Security Proceedings." *Gillespie v. Astrue*, No. 1:13-CV-00219, 2014 WL 1168872, at \*9 (W.D. La. Mar. 21, 2014); *see Dell v. Saul*, 807 F. App'x 385, 386 (5th Cir. 2020) (stating that neither *Daubert* nor the Federal Rules of Evidence apply in agency proceedings). As a result, evidence may be received at any hearing before the Commissioner of Social Security even though it would otherwise be inadmissible under rules of evidence applicable to court procedure. *See* 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.950(c); *see also Richardson v. Perales,* 402 U.S. 389, 400-01 (1971). The "ALJs who conduct SSA hearings

have no *Daubert* gate-keeping duty for vocational expert testimony." *Gillespie*, 2014 WL 1168872, at *9; *see also Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."). As a result, Rodriguez's argument that the VE's testimony is not reliable pursuant to *Daubert* is not a valid argument. Consequently, remand as to this issue is not required. *See Byers v. Colvin*, No. 4:14-CV-00164-CAN, 2017 WL 1251079, at *7 (E.D. Tex. Mar. 10, 2017) (stating that, because the Federal Rules of Evidence do not apply in social security proceedings, *Daubert* has no applicability).

### D.    **Duty to Develop the Record**

In his final argument, Rodriguez argues that the ALJ "failed to fully and fairly develop the record." (Pl.'s Br. at 14.) Specifically, Rodriguez claims that, after the SAMCs review of his claims, he submitted additional evidence to the ALJ regarding issues with his cervical spine, including cervical degenerative disc disease and stenosis. (Pl.'s Br. at 15-17.) Rodriguez argues that, at the hearing, his attorney informed the ALJ that Rodriguez's disability was related to neck problems but that Rodriguez "was not allowed to thoroughly testify regarding his physical impairments." (Pl.'s Br.at 16.) In addition, Rodriguez states:

> The Plaintiff contends the Decision was not based upon substantial evidence or the record as a whole when the ALJ did not mention any of the evidence regarding the Plaintiff's cervical spine impairment and was not allowed to fully testify at the hearing about how the impairment affected his ability to perform work related activities.
>
> This error impacted the Plaintiff's right to a fair administrative review as the record was not fully and fairly developed. . . . In the Plaintiff's case, the ALJ failed to fully and fairly develop the facts stemming from the medical evidence related to the Plaintiff's documented cervical degenerative disc disease and stenosis. Included in the duty is to have a medical doctor review, interpret and opine what functional limitations impact work activities because the ALJ is not a medical doctor. . . .

21

Here, the ALJ should have had a medical expert assist him in assessing what limitations stemmed from the Plaintiff's documented cervical degenerative disc disease and stenosis and how those limitations affected his ability to perform work activities. This is because "no medical statement has been provided" to advise the ALJ on the Plaintiff's cervical impairment and the additional medical records documented there was "a change in [his] condition that is likely to affect [his] ability to work." *Ripley* [*v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)]; 20 C.F.R. § 404.1519a(4). The ALJ's duty to fully and fairly develop the record was heightened when the state agency failed to obtain any of the Plaintiff's medical records concerning his cervical spine impairment despite the consultative examination performed by Dr. Boone (which was scheduled by Social Security) referenced the motor vehicle accident in December of 2020. Failure of the ALJ to obtain a medical source statement rendered the Decision in error of the law and not supported by substantial evidence. . . .

(Pl.'s Br. at 17-18.)

A review of the ALJ's decision reflects that he was aware of all of Rodriguez's impairments and acknowledged that he had a duty to consider severe and non-severe impairments, individually and in combination. (Tr. 11-12.) The ALJ, contrary to Rodriguez's claims, did analyze his back issues, including his back pain cervical spine impairment (Tr. 17.) The ALJ cited to multiple treatment records and evidence that, *inter alia*, he: (1) suffered from back pain and such pain was exacerbated following a motor vehicle accident; (2) had self-discontinued medications due to side effects; (3) was being treated with epidural steroid injections, reported that he experienced 100% pain relief for one month, and requested additional injections; and (4) was advised to follow conservative treatment. (Tr. 17 (citing, *e.g.*, Tr. 639, 927, 1111, 1145, 1149, 1162-64).) In addition, in making his RFC determination, the ALJ stated, "Based on the findings of bilateral knee pathology, as well as the stenosis in his lumbar spine, I find support for the reduced lifting and/or carrying due to the effects of his pain and dysfunction." (Tr. 17.)

Based on the foregoing, the Court finds that the ALJ undertook the appropriate analysis of Rodriguez's back pain, including his cervical spine impairment, and substantial evidence supports his analysis. As noted above, the ALJ properly exercised his responsibility as fact finder to weigh

the evidence and incorporate limitations in his RFC assessment that the record supported. *See Audler v. Astrue,* 501 F.3d 446, 447 (5th Cir. 2007). Therefore, the Court concludes that the ALJ fully and fairly developed the record regarding Rodriguez's back pain and impairments, and reversal is not required on this issue.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be **AFFIRMED**.

## **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 1, 2023** to serve and file written objections to the United States Magistrate Judge's proposed findings,

conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 15, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv